# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **MANSFIELD PROPERTIES, LLC,** *et al.*, | ) ) ) | **CASE NO. 08 CV 668** |
| **Plaintiffs,** | ) ) | **JUDGE PATRICIA A. GAUGHAN** |
| **vs.** | ) ) ) | |
| **MEDICAL DEVELOPMENT MANAGEMENT, LLC,** *et al.*, | ) ) ) | <u>Memorandum of Opinion and Order</u> |
| **Defendants.** | ) | |

## <u>INTRODUCTION</u>

This matter is before the Court upon Bank VI and Alan R. Eichelberger's Motion to Dismiss (Doc. 15) and A.J. Schwartz's Motion to Dismiss (Doc. 29). This case arises out of a private placement of securities under the Securities Exchange Act of 1934 and subsequent loan and lease transactions. For the reasons that follow, Bank VI and Eichelberger's Motion to Dismiss is GRANTED as to Bank VI and DENIED as to Eichelberger and Schwartz's Motion to Dismiss is GRANTED.

**FACTS**

The following facts are taken from plaintiffs' Complaint.  Only those facts necessary for resolution of the pending motions are presented.  Plaintiffs are Mansfield Properties, LLC, Mansfield Imaging, LLC and eleven individuals:  Dr. Michael L. Amalfitano, Dr. John K. Hughes, Dr. John W. Peck, II, Dr. Vijeth Sringeri, Dr. Robert E. Exten, Jr., Dr. Kandhasamy Kannapiran, Dr. Michael F. Stretanski, Dr. Vasanti K. Desai, Dr. Anil Paul, Ravinda K. Malhotra, MD, Inc. and Dr. Chaturbhai B. Patel.[1]  The plaintiffs are all citizens of Ohio.

Defendants are Medical Development Management, LLC, Medical Development Associates, LLC, Universal Health Network, LLC, A.J. Schwartz, Alan R. Eichelberger and Bank VI.  All defendants are citizens of Kansas except for defendant Universal Health Network, LLC ("Universal"), which is a citizen of New York.

Plaintiffs Mansfield Properties and Mansfield Imaging (the "Mansfield Plaintiffs") were both formed in 2003.  Discussions regarding formation began in 2002.  The idea was to create an imaging company (that is, a medical center that provides imaging services such as MRI's) to which doctors could refer patients.  The doctors also wanted to earn money from the imaging services.  However, certain Medicare and other laws apparently prohibit doctors from participating directly in the profits of such entities.  Accordingly, a two-tier structure was envisioned.  Mansfield Properties was created to hold the assets of the business - the real property and the imaging equipment.  Mansfield Imaging would then lease the office space and equipment from Mansfield Properties.  The doctor-investors would own membership

---

[1]
    While Dr. Malhotra has sued through his corporation, the parties refer to him as an individual plaintiff.  The Court will do likewise.

shares in Mansfield Properties only.  In that way, Mansfield Properties (and thus the doctor-investors) would make money from the imaging services only indirectly - through lease payments from Mansfield Imaging to Mansfield Properties.

The initial funding for Mansfield Properties was accomplished using a private placement of securities.  Defendant A.J. Schwartz was the attorney who compiled the Private Placement Memorandum (the "PPM").  He also served as counsel to the Mansfield Plaintiffs in their formation as Ohio limited liability companies.  The solicitation of potential investors began in 2002.  The initial investors included several physicians in Ohio.[2]  Each investor was required to invest at least $300,000.

Defendants Medical Development Management and Medical Development Associates (hereinafter, the "Development Defendants") as well as defendant Eichelberger were apparently involved in soliciting the initial investors and arranging for other financing for the business.  At the time when formation of the entities was being discussed and financing was being obtained, the Development Defendants sought to offer their services to the Mansfield Plaintiffs.  Defendant Medical Development Management provides administrative services to diagnostic imaging centers and other health care facilities.  Defendant Medical Development Associates develops diagnostic imaging centers and "specialty hospitals."  The Development Defendants made a presentation in Ohio to potential investors regarding the Development Defendants' ability to manage the business and finances of the Mansfield Plaintiffs.  During this process, Eichelberger represented to the Ohio plaintiffs that the Development Defendants

---

[2] Plaintiffs' Complaint does not state which of them, if any, were initial investors.

3

had the ability to manage the Mansfield Plaintiffs' business.  As a result of these communications, it appears that plaintiff Mansfield Imaging entered into a Management and Development Agreement with defendant Medical Development Management.

At this time, the initial investors also inquired into borrowing money from Security Savings Bank ("SSB") to build a building to house Mansfield Imaging and its equipment. SSB, a Kansas bank, had agreed to offer the initial investors and the Mansfield Plaintiffs a "non-recourse" loan (the "Building Loan").  At the time, defendant Eichelberger was Executive Vice President of SSB.  Eichelberger helped the Mansfield Plaintiffs to obtain the Building Loan.  It is not clear who the parties were to the Building Loan agreement. Eichelberger also arranged for Mansfield Imaging to obtain a revolving line of credit at SSB (the "Line of Credit").

In November 2004, Mansfield Imaging opened for business.  Medical Development Management assumed all responsibility for the operation and financial affairs of the imaging company.  At times, Eichelberger attended the Development Defendants' management meetings to discuss the operating affairs of the Mansfield Plaintiffs.  Medical Development Management engaged the services of Universal to perform billing and collection functions for Mansfield Imaging.

Less than one year after Mansfield Imaging began operations, the Development Defendants and Eichelberger suggested that Mansfield Properties purchase a Positron-Emission Tomography scanner ("PET Scanner").  Presentations were made to at least some of the owners of Mansfield Properties during the summer of 2005.  Eichelberger helped to secure the loan used to purchase the PET Scanner (the "2005 Loan Agreement").

4

Eichelberger also traveled to Ohio at least one time to talk to the owners about investing in the PET Scanner.  The loan was secured through First National Bank of Belleville (now known as AstraBank) in Kansas ("FNB").  The original PPM prepared by Schwartz was presented to the owners as evidence of the financial health of the Mansfield Plaintiffs; plaintiffs relied on the information contained therein in deciding to borrow money to purchase the PET Scanner.

The 2005 Loan Agreement was entered into between FNB and Mansfield Properties on June 8, 2005.  The 2005 Loan Agreement had two provisions.  First, the 2005 Loan Agreement provided that Mansfield Properties was required to pay a short-term note due within 90 days of entering into the agreement.  The 2005 Loan Agreement also contained an eight-year lease provision whereby FNB would lease the PET Scanner to Mansfield Properties for a monthly payment.

The 2005 Loan Agreement contains a forum selection clause providing that "the sole and exclusive jurisdiction for any action arising out of or relating to this Letter Loan Agreement or any of the other Loan Documents will be in a State or Federal court of appropriate jurisdiction located in or having jurisdiction over [the] State of Kansas."  "Loan Documents" is defined to include "any and all Notes, security agreements, pledges, assignments, mortgages, leasehold mortgages, guarantees, hypothecations or other instruments, agreements or documents which Borrower [Mansfield Properties] executes to evidence the Notes, collateral or other security for the obligation."

FNB also required a guarantee on the debt.  Mansfield Imaging served as the general Guarantor of the loan evidenced by the 2005 Loan Agreement and signed the 2005 Loan

5

Agreement in this capacity.  The "Limited Guarantors" were Dr. Amalfitano, Dr. Peck, Dr.

Exten, Dr. Malhotra, Dr. Hughes, Dr. Kannapiran, Dr. Paul and Dr. Sringeri.[3]  Each Limited

Guarantor was required to guarantee $40,000 of debt.  While the Limited Guarantors did not

sign the 2005 Loan Agreement, each entered into a separate Guarantee Agreement with FNB

on June 8, 2005.  Each Guarantee Agreement contains a forum selection clause providing that

"the sole and exclusive jurisdiction for any action arising out of or relating to this Guarantee

Agreement will be in a State or Federal court of appropriate jurisdiction located in or having

jurisdiction over [the] State of Kansas."

On August 25, 2005, the 2005 Loan Agreement for the PET Scanner was assigned to

Citizens State Bank.  Eichelberger submits a declaration stating that Citizens State Bank was

later purchased by Sixth Bancshares, Inc.  The name was changed to Bank VI on September

9, 2005.  Thus, defendant Bank VI asserts it has the right to enforce the obligations of the

2005 Loan Agreement and the Guarantees as well.  Eichelberger is now President and co-

CEO of Bank VI.

In 2006, it appears that Mansfield Properties and Bank VI agreed to modify the terms

of the 2005 Loan Agreement.  Accordingly, a Lease Agreement was entered into between

Mansfield Properties and Bank VI on March 8, 2006 (the "2006 Lease Agreement").  The

---

[3]

      These Limited Guarantors represent some but not all of the individual
plaintiffs in this action.  It appears from plaintiffs' briefing that the
remaining three individual plaintiffs - Drs. Desai, Patel and Stretanski
- purchased membership units in Mansfield Properties in October and
November 2005 in reliance on the PPM and other materials used in
connection with the solicitation of the investment for the PET
Scanner.  These three plaintiffs did not invest separately in the PET
Scanner.

6

2006 Lease Agreement essentially appears to extend payment for the PET Scanner and slightly modifies the monthly amounts due.  The 2006 Lease Agreement does not contain a forum selection clause nor does it appear to contain or reference any guarantees.  However, on March 8, 2006, Mansfield Properties and Bank VI also entered into an agreement entitled "Choice of Kansas as Forum State" (the "Forum Selection Agreement").  The Forum Selection Agreement states that

> In the event that either party to this lease agreement declares the other to be in default or breach of the agreement, and it is necessary to resort to litigation of the rights and remedies of the parties to the agreement, the forum for such proceedings shall be the courts in the state of Kansas.  Although states other than Kansas may have some connection to the transactions between these parties, the parties waive any right which they may otherwise have to bring legal proceedings against the other in any state other than Kansas.

In 2006, several owners of Mansfield Properties became concerned about the financial health of the company because they were no longer receiving regular distribution checks.  An audit was conducted that allegedly revealed the bases for the current action.[4]

The Complaint contains the following causes of action:  (1) plaintiff Mansfield Imaging charges defendant Medical Development Management with breach of the Management and Development Agreement; (2) plaintiff Mansfield Imaging states defendant

---

[4]
> Plaintiffs allege in part that the 2005 Loan Agreement was procured through fraud or misrepresentation.  Accordingly, Mansfield Properties has ceased making payments to Bank VI on the 2005 Loan Agreement and/or 2006 Lease Agreement.  On January 29, 2008, Bank VI initiated an action in the Kansas state courts against Mansfield Properties as the borrower, Mansfield Imaging as the Guarantor and the Limited Guarantors.  Those entities counterclaimed  for a declaration of the rights and responsibilities under both the 2005 Loan Agreement and the 2006 Lease Agreement.

7

Medical Development Management is estopped from denying the Management and Development Agreement; (3) plaintiff Mansfield Imaging charges defendant Medical Development Management with unjust enrichment; (4) the Mansfield Plaintiffs[5] charge the Development Defendants and Eichelberger with common law fraud; (5) the Mansfield Plaintiffs charge defendant Universal with fraud; (6) the Mansfield Plaintiffs charge Universal with unjust enrichment; (7) all plaintiffs charge Schwartz and the Development Defendants with securities fraud by violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder; (8) all plaintiffs charge Eichelberger with aiding and abetting securities fraud; and (9) all plaintiffs seek a declaration that Bank VI does not hold the right to enforce the 2005 Loan Agreement.

Defendants Eichelberger, Bank VI and Schwartz move to dismiss all counts against them for lack of personal jurisdiction and improper venue. In the alternative, Schwartz and Bank VI move to dismiss for failure to state a claim. Plaintiffs oppose the motions.[6]

## **STANDARD OF REVIEW**

## I. **Personal Jurisdiction**

The Due Process Clause of the Fourteenth Amendment operates to limit the power of a State to assert in personam jurisdiction over a nonresident defendant. *Pennoyer v. Neff*, 95

---

[5] In connection with its motion to dismiss pursuant to a forum selection clause, Bank VI argues that only Mansfield Imaging has asserted fraud against Eichelberger. The Court does not read the Complaint so narrowly. Complaint at ¶¶ 85-86.

[6] Bank VI, Eichelberger and Schwartz also moved to dismiss certain cross-claims asserted by Universal. Universal has since voluntarily dismissed these cross-claims. (Doc. 30)

U.S. 714 (1878).  Presented with a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), "a court has three procedural alternatives:  it may decide the motion upon the affidavits alone;  it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions."  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  The court has discretion to decide which method it will follow.  *Id.*  However the court handles the motion, the plaintiff always bears the burden of establishing that jurisdiction exists.  *Serras v. First Tennessee Bank National Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989).  If the defendant supports his motion to dismiss with affidavits, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.  *Theunissen*, 935 F.2d at 1458 (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974).

In the absence of an evidentiary hearing, the court must view the pleadings and affidavits in the light most favorable to the plaintiff and not consider the controverting assertions of defendant.  *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721-22 (6th Cir. 2000).  Thus, the plaintiff's burden is only that of making a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.  *Id.*; *see also Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) ("When the district court dismisses a complaint pursuant to Rule 12(b)(2) without conducting an evidentiary hearing on the issue of personal jurisdiction ... the plaintiff need only make a *prima facie* showing of jurisdiction ... [and the court] will not consider facts proffered by the defendant that conflict with those offered by the plaintiff ...").  This burden is "relatively slight."  *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988).  A *prima facie* showing is made by "establishing with reasonable particularity sufficient contacts

between [defendant] and the forum state to support jurisdiction." *Neogen Corporation v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (internal citations omitted).   Under this standard, dismissal is "proper only if all the specific facts which the plaintiff ... alleges collectively fail to state a *prima facie* case for jurisdiction."  *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 149 (6th Cir.1997) (quoting *Theunissen*, 935 F.2d at 1458) (emphasis added by *Kerry Steel* court).

## II.    Improper Venue

Fed. R. Civ. Pro. 12(b)(3) provides that a defendant may move to dismiss for improper venue.  "[T]he plaintiff bears the burden of proving that venue is proper.  The Court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff."  *Gone to the Beach, LLC v. Choicepoint Servs.*, 434 F. Supp. 2d 534, 536-37 (W.D. Tenn. 2006) (citing *Audi AG & Volkswagen of America, Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002)).  If venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. 1406(a).  "The decision of whether to dismiss or transfer is within the district court's sound discretion."  *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir. 1998).

## III.   Failure to State a Claim

When considering a motion to dismiss pursuant to Rule 12(b)(6), the district court must accept all of the allegations in the complaint as true and construe the complaint liberally in favor of the plaintiff.  *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999).  When an allegation is capable of more than one inference, it must be construed in the

10

plaintiff's favor.  *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228 (6th Cir. 1997).  However, the complaint must contain "more than the bare assertion of legal conclusions."  *In Re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).  "In practice, a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory."  *Id.* (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)) (emphasis in original).

### DISCUSSION

### I.      Lack of Personal Jurisdiction

The exercise of personal jurisdiction is valid only if it meets both the state long-arm statute and constitutional due process requirements.  *Calphalon*, 228 F.3d at 721-22 (internal citations omitted).  Due process requirements are satisfied when a nonresident defendant has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Court may acquire personal jurisdiction over a defendant in one of two ways: generally or specifically.  *Kerry Steel*, 106 F.3d at 149.  General personal jurisdiction "depends on a showing that the defendant has continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant."  *Id.*  Specific personal jurisdiction, on the other hand, exposes the defendant to suit in the forum state "only on claims that 'arise out of or relate to' a defendant's contacts with the forum."  *Id.* (internal citations omitted).  Plaintiffs argue that they have specific jurisdiction over the defendants.

11

To show that this Court has specific jurisdiction over defendants, plaintiffs must first show that at least one provision of the Ohio long-arm statute is met.  Ohio's long-arm statute provides in relevant part:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;
>
> ***
>
> (3) Causing tortious injury by an act or omission in this state;
>
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> ***
>
> (C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

Ohio Rev. Code § 2307.382.[7]

If a provision of the long-arm statute is met, the Court then applies a three-part test to determine if due process is satisfied:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).  In

_____

[7]

Plaintiffs do not argue that any other provision of the long-arm statute is applicable.

12

other words, there must be a "relationship among the defendant, the forum, and the litigation" to support a finding of specific jurisdiction over a defendant. *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 (1984).  Defendant's "conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *Burger King*, 471 U.S. at 474 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.  The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  Even a single act can support jurisdiction so long as it creates a "substantial connection" with the forum rather than an "attenuated" one.  *Burger King*, 471 U.S. at n.18.

A.      *Specific Jurisdiction over Bank VI*

Bank VI's motion to dismiss focuses on the 2005 Loan Agreement entered into by Mansfield Properties and FNB.  This agreement was allegedly later assigned to Bank VI.  Bank VI argues that if this agreement forms the basis of plaintiffs' claims, then Bank VI cannot be haled into court in Ohio because Bank VI did not transact any business in Ohio in connection with this particular agreement.  In fact, Bank VI did not come into existence until several months later.  All of the negotiations were conducted by Eichelberger and FNB.

The term "transacting business" as used in Ohio's long-arm statute has a very broad meaning.  Transact "means to prosecute negotiations; to carry on business; to have dealings ...

13

The word embraces in its meaning the carrying on or prosecution of business negotiations but it is a broader term than the word 'contract' and may involve business negotiations which have been either wholly or partly brought to a conclusion ..." *Ky. Oaks Mall Co. v. Mitchell's Formal Wear*, 559 N.E.2d 477, 480 (Ohio 1990) (quoting Black's Law Dictionary). However, that meaning is not limitless. *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506 (6th Cir. 2006) (assignee of contract did not transact business in Ohio merely by being assigned the right to enforce the contract).

In response, plaintiffs state that the 2005 Loan Agreement is "not the current operative agreement between the parties." They state instead that their "claims arise out of the lease agreement, not the loan agreement." Bank VI is a party to the 2006 Lease Agreement. Plaintiffs argue that Bank VI did "transact business" in Ohio when it negotiated the 2006 Lease Agreement. In reply, Bank VI disputes that plaintiffs' claims arise out of the 2006 Lease Agreement.[8]

The only count in plaintiffs' Complaint directed against Bank VI is Count Nine for declaratory judgment. Plaintiffs allege:

> Bank VI claims to hold an enforceable right to enforce the obligations of MPL [Mansfield Properties], MIC [Mansfield Imaging] and the individual plaintiff investors under the terms of certain *lease agreements originally executed by the plaintiffs with the First National Bank of Belleville, Kansas.* Bank VI does not enjoy an enforceable right to enforce the obligation of MPL, MIC or the individual plaintiff investors because the guarantees and obligations it seeks to enforce were obtained by fraud which was

---

[8]

> Alternatively, Bank VI argues that if plaintiffs' claims do in fact arise out of the 2006 Lease Agreement, they have failed to state a claim upon which relief can be granted because this agreement is not mentioned in the Complaint.

14

aided and abetted by its President and Co-CEO, Eichelberger.  The knowledge of Eichelberger as President and Co-CEO is imputed to Bank VI.  *Bank VI is not a purchaser or assignee for value without notice*.  The plaintiffs seek a declaration of rights and responsibilities of their obligation under the terms and conditions of the lease agreement and injunctive relief against the enforcement of the leases until the declaration is determined.

Complaint at 22-23 (emphases added).

It is clear from the face of the Complaint that plaintiffs are charging fraud in connection with the original 2005 Loan Agreement.  The claim is directed to the lease that was "originally executed by the plaintiffs with the First National Bank of Belleville, Kansas." Plaintiffs' allegation that "Bank VI is not a purchaser or assignee for value without notice" is also telling.  Plaintiffs are clearly referring to the agreement that was entered into by FNB and later assigned to Bank VI.  The fact that plaintiffs refer to this agreement as a "lease" does not change the Court's analysis.  The Complaint consistently refers to the 2005 Loan Agreement with FNB as a "lease agreement."  *E.g.,* Complaint at 14 ("Following Eichelberger's acquisition of Bank VI and on a date presently unknown to the plaintiffs, Bank VI obtained the Lease Agreement formerly existed [*sic*, existing] between MPL and MIC, the PET guarantors and the First National Bank of Belleville.").  In fact, the Complaint does not even mention the existence of the 2006 Lease Agreement.

Given the allegations in the Complaint, the Court can only conclude that plaintiffs' claim arises out of the 2005 Loan Agreement.  Because Bank VI was not involved in negotiating that transaction in any way, Bank VI cannot be said to have transacted business in Ohio with respect to that agreement.  *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506 (6th Cir. 2006) (successor-in-interest to contract did not transact business in Ohio).  Further, Bank

15

VI's possible activities in Ohio relating to the 2006 Lease Agreement - of which the Court has no evidence or allegations - cannot in any event form the basis for this Court to exercise jurisdiction to adjudicate a dispute over the 2005 Loan Agreement.  Ohio Rev. Code § 2307.382(C) (Ohio's long-arm statute only reaches causes of action arising from the activities set forth in the statute); *see also Mohasco*, 401 F.2d at 381 ("the cause of action must arise from the defendant's activities" in the forum).

This Court must conclude that it does not possess personal jurisdiction over Bank VI in this matter.[9]  Bank VI's motion to dismiss for lack of personal jurisdiction is granted.[10]

B.      *Specific Jurisdiction over Eichelberger*

Eichelberger moves to dismiss plaintiffs' claims against him for lack of personal jurisdiction.  Plaintiffs' Complaint establishes that Eichelberger sent materials through the mail to plaintiffs in Ohio in 2002 or 2003, including materials that made representations regarding the Development Defendants' integrity and abilities.  He also negotiated the Building Loan and the later 2005 Loan Agreement with FNB for the PET Scanner. Eichelberger admits that he traveled to Ohio to discuss with plaintiffs the investment in the PET Scanner.

These activities conducted over a period of at least three years with Ohio citizens and

---

[9]

Having reached this conclusion, the Court will not address Bank VI's other contentions regarding improper venue and failure to state a claim.

[10]

The Court notes that, as recited in the Facts section above, the question of plaintiffs' obligations under both the 2005 Loan Agreement and the 2006 Lease Agreement is already being litigated in Kansas state court.

entities are sufficient to find that Eichelberger "transacted business" in Ohio and to establish personal jurisdiction over Eichelberger. *Cf. Kentucky Oaks*, 559 N.E.2d at 480 (court has personal jurisdiction over out-of-state lessee who negotiated lease with Ohio lessor over the telephone). The Court further finds that the requirements of due process are met. It cannot be doubted that Eichelberger "intentionally and *purposefully* directed activities at Ohio" when he negotiated the various financing documents with the Ohio plaintiffs. *Id.* at 481 (emphasis in original). This satisfies the "purposeful availment" prong of the *Mohasco* test recited above. It also cannot be disputed that the second prong of the *Mohasco* test is met - plaintiffs' causes of action for fraud against Eichelberger arise out of his activities in and directed at Ohio. Finally, Eichelberger's acts and the consequences thereof have a substantial enough connection to Ohio to make the exercise of jurisdiction over him reasonable.

The Court deems unavailing Eichelberger's argument that he could not reasonably have anticipated being haled into court in Ohio because the financing documents at issue provide that Kansas shall be the exclusive forum for disputes. First, the law does not support his contention. *Kentucky Oaks*, 559 N.E.2d at 481 (choice-of-law provision naming a different forum does not defeat finding that minimum contacts exist). Second, he is not party to any of those agreements and so he could not reasonably have expected to have any legal right to enforce their provisions.

Eichelberger's motion to dismiss for lack of personal jurisdiction is denied.

C.      *Specific Jurisdiction over Schwartz*

Plaintiffs allege that Schwartz prepared the PPM that was used to solicit funding for the Mansfield Plaintiffs in 2002-2003 and for the PET Scanner in 2005. Plaintiffs also allege

17

that he "acted as counsel in forming" the two entities.  Plaintiffs allege that they relied on the statements contained in the PPM when they decided to invest in the Mansfield Plaintiffs and in the PET Scanner.  Plaintiffs also allege generally that "the acts and transactions constituting violations of the Exchange Act and giving rise to the diversity claims occurred in whole or in part in the Northern District of Ohio."

Schwartz argues that these allegations are insufficient to establish even a *prima facie* case that he transacted business in Ohio or regularly conducts business in Ohio.  He also argues that his activities as counsel to the Mansfield Plaintiffs during their formation were so attenuated that he should not be deemed to have purposefully availed himself of the forum. *See Sawtelle v. Farrell*, 70 F.3d 1381 (1st Cir. 1995) (out-of-state attorney hired to handle *out-of-state litigation* not subject to personal jurisdiction of court); *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223 (8th Cir. 1987) (same).  He also argues that the single claim against him for securities fraud does not arise out of any activities in the forum because the PPM was not drafted in Ohio.  *Sawtelle*, 70 F.3d 1381.

Plaintiffs, in opposition, rely on *Corporate Partners, L.P. v. National Westminster Bank PLC*, 126 Ohio App.3d 516 (1998).  In *Corporate Partners*, the Ohio court of appeals reversed a decision of the common pleas court dismissing an action for lack of personal jurisdiction against a defendant who had prepared a private placement memorandum that induced plaintiffs to invest in an Ohio-based pharmaceutical company.  The appeals court found:

> [Defendant] was retained by [the pharmaceutical company] as its exclusive placement agent in connection with [it's] offering of hundreds of millions of dollars worth of debt and equity.  Pursuant to its duties as placement agent, [defendant] met with [the

18

> pharmaceutical] executives in Youngstown, Ohio, visited stores and warehouses in Mahoning County, and attended meetings and other events in the Youngstown area. [Defendant] then prepared a Private Placement Memorandum which was ultimately distributed to perspective [*sic*, prospective] investors. [Defendant's] actions in preparing the PPM clearly qualify as transacting business in this state. ... [And] Appellants' cause of action clearly arises from [defendant's] transaction of business in this state, *i.e.*, preparation of the PPM.

*Corporate Partners*, 126 Ohio App.3d 516.

Plaintiffs also rely on *Pullins v. Klimley*, 2008 U.S. Dist. LEXIS 3467 (S.D. Ohio Jan. 7, 2008). In *Pullins*, the district court found that sellers of securities purposefully availed themselves of Ohio as a forum even though all contacts with investors took place outside Ohio (defendant conceded that the long-arm statute was met). The court concluded that the contacts were "directed toward" Ohio plaintiffs and were part of the "alleged course of dealing." The court further stated that defendants "should have anticipated that making the alleged misrepresentations and/or omissions regarding the Debenture Notes might cause them to be haled into court in Ohio."

Construing the facts in the light most favorable to plaintiffs, as the Court must, the Court finds that Schwartz did transact business in Ohio and purposefully avail himself of the forum. Schwartz created the Mansfield Plaintiffs - both Ohio entities - and created the document that was used to solicit doctors in Ohio to invest in these entities. Given the broad definition of "transacting business" in the Ohio courts, the Court finds that Schwartz's activities did constitute transacting business. As to the due process inquiry, the Court finds the *Pullins* case particularly persuasive. It is not unreasonable to conclude that Schwartz should have anticipated that a dispute regarding these Ohio entities - which he formed - and

19

these Ohio investors - whom he solicited with his PPM - would be brought in Ohio.

The Court also finds that the claim against Schwartz arises out of his activities in Ohio.  Schwartz argues that the claim arises only out of his preparation of the PPM and not out of his actions as counsel to the Mansfield Plaintiffs.  The Court disagrees.  The PPM transaction is not wholly separate and apart from the formation of the Mansfield Plaintiffs. One could not have occurred without the other.  Moreover, Schwartz does not dispute that he prepared the PPM for these Ohio entities knowing that it would be used to solicit potential investors in Ohio.  Finally, the exercise of jurisdiction over him is reasonable.  Thus, all three prongs of the due process test are met.

Schwartz's motion to dismiss for lack of personal jurisdiction is denied.

## II.    Improper Venue

Eichelberger and Schwartz argue that under Kansas law, mandatory forum selection clauses must be enforced "unless the party opposing enforcement can clearly show enforcement would be unreasonable and unjust or that the clause was invalid for such reasons as fraud or overreaching."  *Thompson v. Founders Group Int'l, Inc* ., 886 P.2d 904 (Kan. App. 1994).  However, neither Eichelberger nor Schwartz is a party to any of the agreements at issue here.

The 2005 Loan Agreement is between Mansfield Properties and FNB; the accompanying Guarantees are between FNB and the Limited Guarantors who are several but not all of the individual plaintiffs in this action.  The 2006 Lease Agreement, similarly, is between Mansfield Properties and Bank VI as is the Forum Selection Agreement that was executed contemporaneously with the 2006 Lease Agreement.

20

Eichelberger and Schwartz side-step the issue and argue that the claims against them "arise out of or relate to" the 2005 Loan Agreement.  Plaintiffs disagree.  In any event, even if Eichelberger and Schwartz could establish that the various forum selection clauses are broad enough to apply to the claims brought against them, they cannot enforce the clauses nor can they compel the plaintiffs who did not enter into these agreements to be bound by them. *Thompson*, 886 P.2d at 906 (defendant who was not party to contract cannot enforce forum selection clause against plaintiffs).[11]

Eichelberger and Schwartz's motions to dismiss for improper venue are denied.[12]

## III.    Failure to State a Claim

Defendant Schwartz also asserts that plaintiffs have failed to state a claim against him upon which relief can be granted.  Plaintiffs' complaint sets forth the following allegations against Schwartz:

- Schwartz is an attorney licensed to practice in the state of Kansas with the law firm of Morris, Laing, Evans, Brock & Kennedy, Chtd. Schwartz acted as counsel in forming MPL and MIC and is the author of the Private Placement Memorandum (the "PPM") and any of its supplementation described in this Complaint.

- MPL was formed as an Ohio limited liability company on November 11, 2003 through

---

[11]

Bank VI's argument that it is "entitled to require Plaintiffs to bring their claims against Eichelberger in Kansas" is without merit especially considering they are being dismissed from this suit.

[12]

Having determined that the forum selection clauses cannot be enforced by Eichelberger and Schwartz, the Court declines to reach plaintiffs' alternate argument that the clauses were procured by fraud.

21

the efforts of A.J. Schwartz.

- A PPM was prepared by Schwartz and was circulated to predominately physician investors who would utilize the services of the imaging center in the care and treatment of their patients.

- The PPM for MPL is replete with misrepresentations of fact and law, including but not limited to:  (a) Ohio Medical Development ("OMD"), identified as the principal operator of the business, did not exist at the time of the offering; (b) Membership interests in MPL were sold after the offering, by its terms, was terminated; (c) The PPM misrepresented that real estate was to be acquired; (d) Membership interests were sold on the representation of compliance with the whole hospital exception to the Stark law, but the exception was not available because the project was not developed as a hospital; (e) Projections of financing costs and the total amount of the financing were grossly understated; (f) The sources and uses statement understated the expenditures to be incurred and failed to disclose reliance upon the operating line of MIC to support operations, investor distributions and continued viability; (g) It misrepresented the ability of MDA to develop the building; (h) It misrepresented the skill and ability of MDM to manage the imaging center.

- As recounted in the factual background statement, Schwartz prepared the original PPM, he prepared the supplement which repeated the original PPM and ushered in the new PET scanner investors and additional investors to the original issue.

- At all times alleged in the Complaint, defendants Schwartz, MDM and MDA, in connection with the purchase and sale of the securities described above and based

22

upon the allegations described in Paragraphs 1 through 58 by the use of the mails, directly and indirectly, employed devices, schemes, and artifices to defraud, made statements of material fact and omitted to state material facts necessary in order to make statement made, in light of the circumstances under which they were made, not misleading; and engaged in acts, practices and courses of business which operated as a fraud and deceit upon the purchasers of such securities or in the alternative, by reason of the activities described in Paragraphs 1 through 58.

- Schwartz, MDM and MDA knew, or were reckless in not knowing, of the inaccurate information concerning the securities, as described above, and therefore violated Section 10(b) of the Exchange Act [15 U.S.C. §78(b)] and Rule 10b-5 [17 C.F.R. §240.10b-5] promulgated thereunder.

- By reason of the activities described above, Schwartz, MDM and MDA and each of them violated Section 10(b) of the Exchange Act [15 U.S.C. §78(b)] and Rule 10b-5 [17 C.F.R. §240.10b-5] promulgated thereunder.

- As a direct and proximate cause of the conduct of Schwartz, MDM and MDA, in violation of the 1934 Exchange Act and Rule 10b-5 thereunder, the plaintiffs have been damaged in an amount yet to be fully determined.

The Securities Exchange Act of 1934 provides

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

23

15 U.S.C. § 78(b).

The Securities and Exchange Commission has promulgated the following rule to further articulate what actions will constitute a violation of the Exchange Act:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

To prevail on a claim for securities fraud, plaintiffs must prove:  "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761, 768 (2008).

To prove the element of scienter, plaintiffs must prove that defendant acted with actual knowledge or recklessness.  *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 681 (6th Cir. 2004).

> The Supreme Court has defined scienter as a mental state embracing intent to deceive, manipulate, or defraud.  In securities fraud claims based on statements of present or historical fact - such as the claims Plaintiffs bring in this case - scienter consists

24

> of knowledge or recklessness.  Recklessness is defined as highly unreasonable conduct which is an extreme departure from the standards of ordinary care.  While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it.  Recklessness is a mental state apart from negligence and akin to conscious disregard.

*Id.* at 681-82 (internal citations and quotations omitted).

In pleading common law fraud, knowledge may be alleged generally.  Fed. R. Civ. P. 9(b).  However, with respect to securities fraud, plaintiffs must meet a higher pleading standard.  With respect to the scienter element of a private cause of action for securities fraud, the statute provides:

> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state *with particularity facts giving rise to a strong inference* that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2) (emphasis added).

Schwartz argues that the claim asserted against him must be dismissed because plaintiffs fail to set forth any specific facts in their Complaint supporting their allegation that he acted with scienter.  Plaintiffs respond that Schwartz "played a central role in every facet of the creation and development of the business plan for MPL and MIC, the form and structure of the investment, the solicitation of the individual physician investors, and derived direct pecuniary gain from his efforts."  Plaintiffs' brief in opposition to the motion to dismiss is replete with new allegations - most significantly that Schwartz is a principal in and owner of the Development Defendants.  He also had check-writing authority for plaintiff Mansfield Properties and "visited Mansfield, Ohio on multiple occasions to personally oversee and

25

participate in the direct solicitation of the physician investors through oral and written representations regarding the strength of the investment."

However, plaintiffs' Complaint contains none of these allegations.[13]  While plaintiffs do allege with specificity the statements in the PPM they allege to be fraudulent, they fail to set forth "with particularity facts giving rise to a strong inference" that Schwartz acted with scienter in soliciting the plaintiffs' investments.  They merely allege in conclusory fashion that he "knew, or [was] reckless in not knowing, of the inaccurate information concerning the securities."  Plaintiffs assert no factual bases for this allegation of scienter.  Given the particularly high standard for pleading a private cause of action for federal securities fraud the Court must find that plaintiffs have failed to adequately plead their claim.[14]

Schwartz's motion to dismiss for failure to state a claim is granted.

## **CONCLUSION**

For the foregoing reasons, Bank VI and Eichelberger's Motion to Dismiss is GRANTED as to Bank VI and DENIED as to Eichelberger and Schwartz's Motion to Dismiss is GRANTED.

IT IS SO ORDERED.

---

[13]

    The Court does not suggest that the allegations in plaintiffs' opposition to the motion to dismiss would be sufficient if pled in the Complaint.

[14]

    Having resolved the motion on this ground, the Court declines to address Schwartz's alternate argument that plaintiffs failed to adequately plead reliance.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge


Dated: 9/5/08